IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 12, 2001 Session

## HAROLD EUGENE LOVELACE, D/B/A THE LAST CHANCE CLUB, and UNDERGROUND II, INC., D/B/A THE BOILER ROOM, v. THE CITY OF KNOXVILLE, TENNESSEE, ET AL.

**Direct Appeal from the Chancery Court for Knox County**
**Nos. 141142-3 and 141160-3     Hon. Sharon Bell, Chancellor**
  MARCH 27, 2001

**No. E2000-01609-COA-R3-CV**
 FILED MARCH 27, 2001 

In this Declaratory Judgment action the Trial Court held portions of a City Ordinance unconstitutional relative to notice provisions, the term "open for business" and "open display". We affirm in part, reverse in part and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part, and remanded.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Michael S. Kelley, Law Director, Hillary B. Browning, Assistant City Attorney, and Charles Swanson, Knoxville, Tennessee, for Appellant, City of Knoxville.

Jerrold L. Becker and Samuel W. Brown, Knoxville, Tennessee, for Appellees, Harold Eugene Lovelace, d/b/a The Last Chance Club, and Underground II, Inc., d/b/a The Boiler Room.

**OPINION**

The plaintiffs in this declaratory judgment action, challenged the validity of an ordinance of the City of Knoxville which prohibits the practice of "brown-bagging" (bringing and consuming your own alcoholic beverages to a public establishment during certain hours.) Defendant had previously enacted an "Anti-Brown Bagging" Ordinance which was found to be unconstitutional by this Court in *Underground II, Inc. v. City of Knoxville*, 1998 WL 46447 (Tenn. Ct. App. Feb. 4,

1998).  Subsequently, defendant adopted another Ordinance which is at issue before the Court, and reads as follows:

**Section 4.2: Unregulated and Unlicenced Possession and Consumption of Beer and Alcoholic Beverages.**

This section shall make the unregulated and unlicenced possession and consumption of beer and alcoholic beverages in a business in the City of Knoxville between the hours of 1:00 a.m. and 6:00 a.m. unlawful.

a) For the purposes of this section, the term "beer" shall mean all beers, ales and other malt liquors having an alcoholic content of not more than five percent (5%) by weight.  For the purposes of this section, the term "alcoholic beverages" shall mean alcohol, spirits, liquor, wince and every liquid containing alcohol, spirits, or wine and capable of being consumed by a human being other than patent medicine or beer there the latter contains an alcoholic content of five percent (5%) or less by weight.  For the purposes of this section, an "open container" is a container which has any opening through which its contents may pass in order to be consumed by any person. For the purposes of this section, "Hotel" is defined in T.C.A. § 67-4-1401, being any structure or space, or any portion thereof, which is occupied or intended or designed for occupancy by transients for dwelling, lodging, or sleeping purposes, and includes any hotel, inn, tourist camp, tourist court, tourist cabin, motel, or any place in which rooms, lodgings, or accommodations are furnished to transients for a consideration.

b) Between the hours of 1:00 a.m. and 6:00 a.m., it is unlawful for any person to consume beer or an alcoholic beverage not lawfully sold by the business on the premises of any business open for business during these hours in the City of Knoxville.

c) Between the hours of 1:00 a.m. and 6:00 a.m., it is unlawful for any person to possess an open container of beer or an alcoholic beverage not lawfully sold by the business on the premises of any business open for business during these hours in the City of Knoxville.

d) Between the hours of 1:00 a.m. and 6:00 a.m., it is unlawful for any owner of a business open for business during these hours in the City of Knoxville knowingly or intentionally to permit any person to possess an open container of beer or an alcoholic beverage not lawfully sold by the business or to consume beer or an alcoholic beverage not lawfully sold by the business on the premises of said business.  For the purposes of this ordinance, notice to an agent or employee of a business shall constitute notice to the owner of the

business.

e) Between the hours of 1:00 a.m. and 6:00 a.m., the open display by any person on the premises of a business open for business during these hours of any open container of beer or an alcoholic beverage marked as if for resale and not lawfully sold by the business, shall be evidence of a violation of subsection (d) above.

f) Any owner of a business open between the hours of 1:00 a.m. and 6:00 a.m., having notice, either actual or constructive, prior to 1:00 a.m. that beer or alcoholic beverages not lawfully sold by the business are being consumed on the premises shall at 1:00 a.m. or within a reasonable time thereafter give notice reasonable calculated to inform all persons on the premises that the consumption of beer or alcoholic beverages or the possession of an open container of beer or an alcoholic beverage on the premises is prohibited by this section. Failure of the owner of a business to give notice pursuant to this subsection, personally or through an agent or employee, shall be unlawful and shall constitute a separate violation of this ordinance. However, such failure shall not provide a defense to prosecution of any person under subsections (c) or (d) for the unlawful possession of consumption of beer of alcoholic beverages.

g) This section does not prohibit the sale of beer or alcoholic beverages by any business which possesses a valid beer permit or alcoholic beverage license during such hours authorized by the laws of the State of Tennessee and the ordinances of the City of Knoxville nor does this section prohibit any other conduct permitted under laws of the State of Tennessee or the ordinances of the City of Knoxville. This section does not prohibit the owner of a business who resides on the premises of the business from consuming beer or alcoholic beverages at any time on the premises of from possessing an open container of beer or alcoholic beverages at any time of the premises. This section does not prohibit the consumption of beer or alcoholic beverages or the possession of any open container of beer or alcoholic beverages by any person within the confines of the person's individual room in any Hotel within the City.

h) The provisions of this section are severable. If any provision of this section or its application to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of this section which can be given effect without the invalid provisions or applications.

**SECTION 2:** An emergency is declared to exist in that it is necessary for the preservation of the public peace, property, health, and safety that this Ordinance take

effect immediately upon its passage.

**SECTION 3:** This Ordinance shall take effect from and after its passage, the welfare of the City requiring it.

Following trial, the Trial Judge ruled that the City had a legitimate interest in minimizing the incidents of public drunkenness, intoxicated drivers and other harmful effects of the consumption of beer and alcoholic beverages, and because the ordinance bore a reasonable relationship to this interest, it was a valid exercise of the City's police power. However, the Court found the Ordinance was unconstitutionally vague as to the notice provision of § 4.2(f) and as to the term "open for business." The Court also found that the Ordinance was unconstitutionally overbroad as to § 4.2(e) concerning "open display." An order was entered on the Court's Memorandum, stating:

> (1) That the Ordinance enacted by the City regulating the unlicenced consumption of beer and alcoholic beverages at certain hours and the possession of open containers of beer and alcohol at certain hours bears a reasonable relationship to the legitimate interest to the City and is valid exercise of its police power; and (2) that the Ordinance is not unlawfully discriminatory in that it does not subject like kinds of persons or entities to unequal treatment; and (3) that the Ordinance is not oppressive in that there is no evidence of actual damage to the Plaintiffs; and (4) that the notice provision of § (f) of the Ordinance is unconstitutionally vague and therefore shall be stricken from the Ordinance; and (5) the term "open for business" if the Ordinance is unconstitutionally vague; and (6) that § (e) of the Ordinance if unconstitutionally overbroad and should be stricken from the Ordinance.

The parties filed Motions to alter or amend, and in response to these Motions the Trial Could held:

> (1) The Defendant City of Knoxville's Motion for Alteration and Amendment of Judgment is denied: (2) that the notice provision of § (f) of the Ordinance is neither integral nor essential to the Ordinance and may be elided from same; that the presumption contained in § (e) of the Ordinance is neither integral not essential to the Ordinance and may be elided from same; that the term "open for business," appearing is §§ (b) (c) (d), and (e) of the Ordinance is integral and essential to the Ordinance and may not be elided, and therefore, the Ordinance in its entirety is unconstitutionally vague; (3) that the Plaintiff's Underground II, Inc., d/b/a The Boiler Room and Harold Eugene Lovelace, d/b/a/ The Last Chance Club's Motion to Alter or Amend is granted, to the extent as set forth herein; (4) that § 4-2 of the Knoxville City Code is void and unenforceable; and (5) that the trial court's Order of Judgment entered January 6, 2000, was incorporated by reference.

The parties have appealed, raising numerous issues.

Our review of this case is *de novo* upon the record, with a presumption of correctness as to any factual determinations made by the Trial Judge, unless the evidence preponderates otherwise. Rule 13(d), T.R.A.P.; *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The Trial Court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). Construction of a statute or ordinance is a question of law to be reviewed *de novo*. *Roseman v. Roseman*, 890 S.W.2d 27, 29 (Tenn. 1994).

It is argued that the Ordinance is void for vagueness. It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298 (1972); *Davis-Kidd Booksellers, Inc., v. McWherter*, 866 S.W.2d 520, 531 (Tenn. 1993). The test for vagueness is whether the statute is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *Connally v. General Construction Co.*, 269 U.S. 385, 391, 146 S.Ct. 126, 127 (1926); *Davis-Kidd*.

The reason for the vagueness doctrine is twofold.

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned*, 408 U.S. at 108-109, 92 S.Ct. at 2298-2299; *see also Davis-Kidd* at 531.

Section (f) of the Ordinance requires an owner to give notice to its patrons at 1:00 a.m. or a "reasonable time thereafter," in a manner "reasonably calculated to inform," that the consumption of beer or alcohol, or the possession of an open container is a violation of the city ordinance. The failure to give notice constitutes a separate violation of the ordinance. The Trial Court struck this notice provision as unconstitutionally vague.

In *Underground II, Inc.*, we held the Ordinance to be unconstitutionally vague, because it failed to "establish minimal guidelines to govern law enforcement." In *Davis-Kidd*, the Court emphasized the importance of the requirement that a legislature provide minimum guidelines to govern law enforcement. 866 S.W.2d at 531. The notice provision in the Ordinance before use does not establish any guidelines for determining when notice is "reasonably calculated to inform" or "within a reasonable time." Under the Ordinance, the owner of a business will not necessarily know what conduct is required of them, and such decision will be left to the discretion of police

officers, judges and juries.

Defendant's Police Chief's testimony reflects that there is no concrete standard for determining when an owner will be cited for failing to "give reasonable" notice, leaving wide discretion to the investigating officer. As we said in *Underground*:

> [I]f the Chief of Police is unable to articulate any objective guidelines to be followed in enforcement of the ordinance, then it must be assumed 'the ordinary people can[not] understand what conduct is prohibited an in a manner that does not encourage arbitrary and discriminatory enforcement.'

*Underground*, 1998 WL 46447 at *6. We conclude the notice provision is unconstitutionally vague and we agree with the Trial Judge that the notice provision is severable from the Ordinance and section (f) will be deleted from the Ordinance.

Sections (b) and (c) of the Ordinance prohibit consumption of and possession of an open container of beer or alcoholic beverages "not lawfully sold by the business on the premises of any business open for business" between the hours of 1:00 am and 6:00 am. The Trial Court found the term "open for business" as used in the Ordinance to be unconstitutionally vague. The Court relied heavily upon the testimony of Chief Keith for this ruling. While the Trial Judge could consider the Chief's testimony as evidence of how a reasonable person would understand the Ordinance, the ultimate decision of whether an ordinance is vague is a question of law and in the sole province of the Court. *See Roseman*. While the Chief could not articulate a precise definition of when a business was open, he did testify that he believed it to be commonly understood when a business was open or closed.

The vagueness doctrine does not invalidate every statute which a reviewing court believes could have been drafted with greater precision, especially in the light of the inherent vagueness of many English words. *State v. Lyons*, 802 S.W.2d 590, 592 (Tenn. 1990). There is no specific definition in the Ordinance of the phrase "open for business," but we think ordinary people can understand when and where an establishment is open for business, and when and where consumption or possession of alcoholic beverages would be prohibited under this ordinance. We therefore find the Trial Court to be in error in finding the phrase "open for business" to be vague.

Section (d) of the Ordinance makes it unlawful for an owner of a business to "knowingly or intentionally" permit the possession or consumption of an "open container" of beer or an alcoholic beverage. Section (e) provides that an "open display" of an open container of beer or alcohol shall be evidence of a violation of Section (d). The Trial Court found that § (e) of the Ordinance, relating to "open display," was unconstitutionally overbroad. In *Underground*, we noted that the 1996 Ordinance did not require that the owner have knowledge or intent that a customer possess alcohol, so that simple possession, whether known to the owner or not, would subject the owner to liability. Here, the defendant assumes that if a container is "openly displayed", the owner, or agent of the owner, must have seen it, and intentionally and knowingly allowed it. The fallacy

of this approach, is the Ordinance does not define the term "open display," and it is not clear on the face of the Ordinance what is meant by the term. Accordingly, Section (e) can place absolute liability on the owner, regardless of whether he or his agent had any actual knowledge or intent.

Defendant argues that the Trial Judge neglected to consider the intent requirement of section (d) which states that a business owner may only be cited for a violations if the City proves knowledge or intent. The defendant claims that the only significance of the "open display" provision is that it be admissible in evidence, but it is not sufficient to establish liability. However, the words of the Ordinance state that the open display "shall be evidence of a violation of subsection (d) above." At a minimum, the Ordinance creates a presumption of knowledge and intent that would be difficult for the owner to overcome. This is particularly true in light of the fact that the Ordinance does not define "open display" or offer any guidelines for law enforcement. Accordingly, we conclude that reasonable persons could differ on their understanding of "open display." And without "minimal guidelines to govern law enforcement," the Ordinance creates confusion and forms a basis for arbitrary or discriminatory application.

The Ordinance creates the very real potential of imposing absolute liability upon the owner, without considering the owner's knowledge or intent. For all of these reasons, the "open display" section of the ordinance is overbroad, and unduly vague. Accordingly, Section (e) will b e elided from the Ordinance.

While considering the overbreadth doctrine, we also look to the fact that the ordinance extends to all businesses, and not just those that are considered to be brown-bagging clubs.

A Statute is overbroad when, based upon its text in actual fact there are a substantial number of instances where the law cannot be applied constitutionally. *New York State Club Assoc., v. City of New York*, 487 U.S.1 14 108 S.Ct. 22-25, 22-34, 101 L.Ed.1 (1988). *State v. Lyons*, 802 S.W.2d 590-593 (Tenn. 1990). The overbreadth doctrine not only prohibits a statute from criminalizing constitutionally protected activity, but may also render a statute unconstitutional, if its sweep has a chilling effect upon constitutionally protected conduct, even though the statute does not directly forbid protected activity. *See United States v. McKinnin Bridge Co., Inc.*, 514 F.Supp. 546-548 (M.D. Tenn (1981), *(citing Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 927 (6th Cir. 1980). A statute is not, however, vulnerable to the overbreadth challenge simply because unconstitutional applications can be imagined. When a statute regulates economic conduct, its overbreadth must be real as well as substantial when judged in relation to its plainly legitimate sweep. *See McKinnon Bridge Co. Inc., (citing Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed2d 830 (1973)). The purpose behind the Ordinance clearly relates to the "brown-bagging" clubs, such as those operated by plaintiff. However, the City's Ordinance is not limited in application to such establishments, but applies to "any business" that is open between the hours of 1:00 and 6:00 a.m. This would include restaurants, businesses that hold grand opening parties at night and, as mentioned during arguments, it might even include an attorney who decides to have a beer while working in his law office during those hours. Nevertheless, for an ordinance

to be struck down on its face, the overbreadth must be real and substantial.  Accordingly, we are unpersuaded that this overbreadth reaches a level of being substantial.

We hasten to add, however, as the *Broadrick* Court noted:

[W]here conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.  It is our view that § 818 is not substantially overbroad and that whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied.

93 S.Ct. p.2918.

Accordingly, we hold this provision is facially valid, but that is not to say, however, that it cannot be constitutionally challenged as to some factual situations as the *Broadrick* Court cautions.

We find no merit in the issue that the Ordinance is unreasonable, oppressive, and discriminatory.  *See Rivergate Wine & Liquors, Inc., v. City of Goodlettsville*, 647 S.W.2d 631 (Tenn. 1983).

Finally, the City has raised on appeal its objection to the Trial Court admitting the testimony of Chief Keith, on the grounds that the Ordinance speaks for itself, and that any question about its constitutionality is a question of law to be decided by the Court.  Without considering the Chief's testimony, the ordinance is vague and overbroad because it does not provide guidelines for enforcement.  On its face, the Ordinance is clearly vague as to the notice that is required to be given by business owners, providing that it must be "reasonably calculated to inform" and must be "within a reasonable time" from 1 a.m.  Ordinary people will understand the idea of "reasonable notice" in very different ways, and it will vary depending upon the existing circumstances.

The "open display" provision is likewise unconstitutional on its face, as it allows for imposition of absolute liability on the owner.  Ordinary people could differ on their understanding of what constitutes an "open display" and without guidance, owners are placed under a great burden to determine whether its patrons are in possession of beer or alcoholic beverages.

To the extent that some of the Chief's testimony should not have been admitted, it is deemed harmless error.  Tenn. R. App. P. Rule 35.

Accordingly, we affirm the Trial Court's Judgment as to the sections of the Ordinance ordered deleted, but reverse its determination on the term "open for business", which we find sufficiently clear.  We remand for entry of a Judgment consistent with this Opinion, and assess the costs one-half to the plaintiffs and one-half to the defendant.

_____
HERSCHEL PICKENS FRANKS, J.